UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-80650-MATTHEWMAN

MATTHEW NICHOLAS MANISERO,

Plaintiff,

vs.

SHERIFF RIC L. BRADSHAW, in his official capacity, et al.,

Defendants.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT, SHERIFF RIC L. BRADSHAW'S MOTION TO DISMISS THIRD AMENDED VERIFIED COMPLAINT [DE 44]**

THIS CAUSE is before the Court upon Defendant Sheriff Ric L. Bradshaw's, in his official capacity as Sheriff of Palm Beach County ("Sheriff Bradshaw"), Motion to Dismiss Third Amended Verified Complaint ("Motion") [DE 44]. Plaintiff Matthew Nicholas Manisero ("Plaintiff") filed a Response [DE 48], and Sheriff Bradshaw filed a Reply [DE 52]. The Motion is now ripe for review. The Court has carefully considered the Motion, the Response, the Reply, and is otherwise fully advised in the premises.

## I. Background

The lawsuit arises from a motor vehicle collision on October 15, 2024. Plaintiff alleges that he was seriously injured in that accident and remains physically impaired with a permanent leg injury that leaves him wheelchair bound. According to Plaintiff, criminal citations related to the motor vehicle accident were mailed to an address where he was not currently residing, which led to the issuance of a bench warrant and his arrest. He was arrested on April 7, 2025, and then

allegedly denied accommodations for his injury. The criminal citations were dismissed on July 8, 2025.

On May 1, 2025, Plaintiff filed a Complaint against Sheriff Bradshaw and several other Defendants in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida. [DE 1-2]. On May 27, 2025, Defendant the City of Boca Raton removed the case to the Southern District of Florida. [DE 1]. On June 2, 2025, Plaintiff filed a First Amended Complaint [DE 8]. Defendant Palm Beach Sheriff's Office, Defendant Boca Raton Police Department, Defendant State Attorney's Office for the 15th Judicial Circuit, Defendant Florida Department of Highway Safety and Motor Vehicles, and Defendant Florida Highway Patrol filed motions to dismiss the First Amended Complaint. [DEs 17, 19, 20, 22]. Thereafter, Plaintiff moved for leave to file a Second Amended Complaint [DE 36], which was later denied [DE 40]. The Court held a Status Conference on July 21, 2025. [DE 39]. At that time, Plaintiff made an Ore Tenus Motion to File a Third Amended Complaint, which the Court granted after all of the parties consented. *Id.* The pending motions to dismiss the First Amended Complaint were denied as moot and without prejudice. [DE 40]. In light of the foregoing, Plaintiff has actually only filed two different versions of his complaint—the original Complaint and the Third Amended Complaint.

Plaintiff filed his Third Amended Complaint against solely Defendants Sheriff Ric. L. Bradshaw, the City of Beach Raton, and John Does 1-5 on July 31, 2025. [Third Am. Compl. ("TAC"), DE 43]. It alleges several claims under 42 U.S.C. § 1983: denial of procedural due process in violation of the Fourteenth Amendment (Count I); unlawful seizure and false arrest in violation of the Fourth and Fourteenth Amendments (Count II); and deliberate indifference to the serious medical needs of a pretrial detainee in violation of the Fourteenth Amendment (Count III). [DE 43]. The Third Amended Complaint also alleges violation of the Americans with Disabilities

Act ("ADA") (Count IV); retaliation for protected activity in violation of section 1983 and the ADA (Count V); and municipal liability under section 1983 and *Monell v. Department of Social Services* (Count VI). *Id.*

**II. Motion, Response, and Reply**

a. Motion

Sheriff Bradshaw moves to dismiss Counts I, II, III, IV, and V of the TAC, as well as all *Monell*[1] claims alleged against him, for failure to state a claim. [DE 44]. The Court has carefully reviewed the Motion and will further analyze some of its specific arguments below.

b. Response

In response, Plaintiff claims that each count has been sufficiently pled and that, if the Court disagrees, Plaintiff should be provided leave to amend. [DE 48]. The Court has carefully reviewed the entire Response.

c. Reply

In reply, Sheriff Bradshaw again argues that the counts against him are insufficiently pled. [DE 52]. He also contends that the Response improperly raises new facts and theories that are not actually pled in the TAC. *Id.* Further, Sheriff Bradshaw points out that several of Plaintiff's case citations are incorrect, which implies the inappropriate use of Artificial Intelligence ("AI"). *Id.* Finally, he asserts that leave to amend based on the discovery of the John Doe defendants is futile. *Id.*

**III. Legal Standards and Analysis**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Pleadings, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* at 680-681 (citations omitted). The Court must review the "well-pleaded factual allegations" and, assuming their veracity, "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. A plaintiff must, under *Twombly*'s construction of Rule 8, cross the line "'from conceivable to plausible.'" *Id.* at 680 (citation omitted). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276–77 (11th Cir. 2003) (citation omitted). "A

constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019)).

a. Count I

Count I of the TAC alleges denial of procedural due process in violation of the Fourteenth Amendment. As to Sheriff Bradshaw, Count I alleges as follows: First, the constitutional violations were "caused by long-standing customs, policies, or practices maintained by [PBSO] concerning jail intake and warrant processing." [TAC ¶ 64]. Second, PBSO staff, "acting under color of state law, routinely executes bench warrants without verifying their facial validity or legal service, even where the individual presents obvious indicators of medical instability or disability." *Id.* Third, PBSO "maintains no written policy or training protocol requiring deputies to assess the legal sufficiency of bench warrants prior to booking, nor to consult the issuing court when service defects are apparent." *Id.* ¶ 65. Fourth, Plaintiff was "booked under a warrant that arose from citations mailed to an outdated address, despite his correct address being printed on the face of the citations. No intake officer confirmed whether lawful notice had occurred, and no supervisory staff intervened to assess Plaintiff's medical condition or procedural objections." *Id.* Fifth, there is a "broader custom at PBSO, where bench warrants are executed without inquiry into service validity, even where facial inconsistencies exist." *Id.* ¶ 66. Sixth, "[o]n information and belief, PBSO has encountered prior complaints or litigations involving improper detention due to service errors, yet failed to update its intake protocols or train deputies accordingly," which amounts to "deliberate indifference under *Monell*." *Id.* Seventh, PBSO's "unconstitutional practices were the moving force behind Plaintiff's unlawful detention, which occurred without valid service, without medical

clearance, and without procedural safeguards, in direct violation of the Fourteenth Amendment." *Id.* ¶ 67.

As an initial matter, the Court will take judicial notice of certain facts without converting the Motion into a motion for summary judgment. *See, e.g., Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). This is appropriate here, where both sides are alluding to attached documents, and the documents are available on the docket in Plaintiff's criminal case in the County Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (Case No. 50-2025-CT-0012181-AXXX-SB) and/or on the docket in this federal case. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").

According to Boca Raton Police Department's Arrest/Notice to Appear dated October 31, 2024, the officer requested a warrant be issued against Plaintiff for the charges of driving while license cancelled, suspended, or revoked in violation of section 322.34(2B), Florida Statutes, and driving without a motorcycle endorsement, in violation of section 322.03(5), Florida Statutes. [DE 45-1 at 3]. On January 22, 2025, the administrative judge of the County Court of the Fifteenth Judicial Circuit, Criminal Division in and for Palm Beach County, Florida, issued an Administrative Order to Issue Summons [DE 45-1 at 4] to Plaintiff for the commission of the misdemeanor traffic charges. The criminal summons was then issued. *Id.* at 5–6. The Palm Beach Sheriff's Office was responsible for service of the criminal summons. *Id.* at 7. When Plaintiff failed to appear at his arraignment, a capias was issued. *Id.* at 8–10.

Probable cause is established "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent

person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Paez*, 915 F.3d at 1285 (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (emphasis omitted)). The Florida Traffic Crash Report is attached to the TAC, and it lays out various facts surrounding the incident. [DE 43-1]. The Probable Cause Affidavit is attached to the Motion. It states in relevant part that, "[a] record search on [Plaintiff] revealed he had a suspended FL DL from a DUI in 2019 along with several additional separate suspensions. Manisero received notice of his suspension as a result of his DUI arrest and court order. Additionally, [Plaintiff] was found to have no endorsement to be operating his Harley MC." [DE 45-1 at 3].

As pointed out by Sheriff Bradshaw, there was facial probable cause for the charges against Plaintiff. To the extent Plaintiff alleges in the TAC that the capias was deficient because the related traffic citations were mailed to an outdated address, it is clear here that the capias was based on Plaintiff's failure to appear for arraignment on March 11, 2025, and was, thus, facially valid. *See* DE 44-2. Therefore, Plaintiff's arguments that Sheriff Bradshaw's personnel violated his rights by failing to inquire into the legal sufficiency of the capias prior to booking Plaintiff and by failing to consult the issuing court when service defects were apparent are without merit. *See Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020) ("[A]n officer ordinarily does not violate the Fourth Amendment when he executes a facially valid arrest warrant, regardless of whether the facts known to the officer support probable cause.").

Further, Plaintiff's arrest was not false or illegal, as he claims. *See Raymond v. Hillsborough Cnty.*, No. 24-14124, 2025 WL 2409096, at *3 (11th Cir. Aug. 20, 2025) ("The existence of probable cause at the time of arrest serves as an absolute bar to a false arrest claim."). The facts alleged in the TAC, when read in conjunction with the parties' attachments, simply do

not amount to a constitutional violation. Therefore, Count I must be dismissed with prejudice as any amendment would be futile. *See Jones v. Fla. Dep't of Corr.*, No. 21-13961, 2022 WL 9712236, at *2 (11th Cir. Oct. 17, 2022) ("A district court need not grant leave to amend however, if the plaintiff clearly indicates that he does not want to amend or if amendment would be futile because a more carefully crafted complaint would still not be able to state a claim.").

b. Count II

Count II of the TAC alleges unlawful seizure and false arrest in violation of the Fourth and Fourteenth Amendments. It alleges, in relevant part, that "PBSO deputies processed Plaintiff at the Palm Beach County Jail following his transport by Boca Raton Police." [TAC ¶ 77]. Thereafter, PBSO staff "removed Plaintiff's medical leg brace, ignored visible signs of surgical trauma, and failed to conduct any medical screening—despite Plaintiff's obvious disability and documented femoral fracture." *Id.* Additionally, PBSO personnel opted not to "verify Plaintiff's identity, inquire into the legal sufficiency of the warrant, or assess the lawfulness of the detention, despite procedural defects and inconsistencies in the originating documents." *Id.* According to the TAC, these actions and failures "constituted deliberate disregard for Plaintiff's medical and constitutional rights and were a direct cause of the unlawful seizure, in violation of the Fourth and Fourteenth Amendments." *Id.*

The same analysis applies here that applied to Count I. There simply was no constitutional violation by Sheriff Bradshaw here. The allegations are at odds with the attachments to the pleadings and do not demonstrate a false arrest or the deprivation of Plaintiff's liberty in violation of the Fourth and Fourteenth Amendments. Thus, the facts here do not establish a constitutional violation. Count II must be dismissed with prejudice as any amendment would be futile.

c. Count III

Count III of the TAC alleges deliberate indifference to serious medical needs of a pretrial detainee in violation of the Fourteenth Amendment. Specifically, it alleges as follows: First, Plaintiff was "subjected to punitive, degrading, and medically hazardous treatment" while in Sheriff Bradshaw's custody, and the "conditions described constitute impermissible punishment without due process, in violation of the Fourteenth Amendment." [TAC ¶ 81]. Second, Boca Regional Medical Center, which is not a defendant in this case, medically cleared him "without legitimate assessment." *Id.* ¶ 82. Third, when Plaintiff arrived at the Palm Beach County Jail, "no medical intake screening was performed," and he was "forced to remove a prescribed orthopedic brace, despite its necessity for femoral stabilization and pain mitigation"; "threatened by a jail staff member with the statement, 'Take off your brace or I'll break your other leg'"; and "shackled at the ankles during court transport despite being non-ambulatory, creating medical risk and unnecessary pain." *Id.* ¶ 83. Fourth, "no pain assessment, safety protocol, or follow-up care plan was implemented" and that these actions "occurred in deliberate disregard of Plaintiff's medical condition and were not anomalies—they reflected institutional neglect." *Id.* ¶¶ 84–85. Fifth, Plaintiff is experiencing ongoing harms, including "pain, impaired mobility, emotional trauma, and ongoing structural instability." *Id.* ¶ 86. Finally, these constitutional violations are the "product of institutional customs, policy failures or deliberate indifference by final policymakers," and there is municipal liability under *Monell*. *Id.* ¶ 88.

In order to prevail on a deliberate indifference to medical care and pretrial detention needs cause of action, the plaintiff must show both that the plaintiff had an objectively serious medical need and also that the government was deliberately indifferent to that need, in that "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (internal quotations omitted) (citing *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015)).

Here, while Plaintiff may have arguably pled a serious medical need (his broken femur), he has not sufficiently pled that Sheriff Bradshaw's personnel were deliberately indifferent to that need. The allegations that no medical intake screening was performed, Plaintiff was forced to remove his orthopedic brace, he was threatened by a jail staff member concerning taking off his brace, and he was shackled at the ankles during court transport simply do not establish the requisite factors of deliberate indifference stated above. And, Sheriff Bradshaw cannot be held liable for whatever occurred at the hospital prior to Plaintiff being brought into custody. Moreover, as alleged in the TAC, Plaintiff was only in jail custody for less than 24 hours. [TAC ¶ 48]. Thus, Plaintiff's allegations regarding ongoing harm are problematic because the TAC does not establish any causation between the short jail stay and Plaintiff's current medical issues. While Count III is deficient, the Court does find it appropriate to provide Plaintiff with an additional chance to amend Count III.

d. Count IV

Count IV of the TAC alleges a violation of the ADA. The TAC alleges that, while Plaintiff was in jail, Sheriff Bradshaw subjected him to conditions that violated the ADA—specifically, "[j]ail staff failed to perform a proper intake assessment, denied Plaintiff reasonable accommodations, and instead subjected him to punitive treatment, including the forced removal of a medically necessary brace and physical threats." [TAC ¶ 89]. Plaintiff seeks injunctive and declaratory relief. *Id.* ¶ 90. He alleges that he was "denied a medical screening upon entry into

custody"; "forced to remove a prescribed orthopedic brace"; "shackled at the ankles despite recent surgical trauma"; and "threatened by a jail officer." *Id.* ¶¶ 92–93. Plaintiff additionally alleges that Sheriff Bradshaw is "liable under *Monell* for maintaining or permitting customs that allowed such conduct to persist despite known risks." *Id.* ¶ 96. Plaintiff finally alleges that he has ongoing medical issues due to this incident and that Sheriff Bradshaw's failures "caused a deterioration" of his medical condition. *Id.* ¶ 97.

"The ADA prohibits discrimination 'against individuals with disabilities.'" *Kinard v. Fla. Dep't of Corr.*, No. 24-10359, 2024 WL 4785003, at *5 (11th Cir. Nov. 14, 2024) (citing 42 U.S.C. § 12101(b)(1)). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to any discrimination by any such entity." *Id.* Here, the TAC does not allege that Plaintiff was actually excluded from participation in—or denied the benefits of—the services, programs, or activities of a public entity. Count IV is therefore due to be dismissed; however, the Court will dismiss Count IV without prejudice and will provide Plaintiff with one more chance to amend, as amendment would not necessarily be futile.

e. <u>Count V</u>

Count V of the TAC alleges retaliation for protected activity in violation of section 1983 (under the First Amendment) and the ADA. Plaintiff alleges that, while he was in custody, he requested certain accommodations and objected to unlawful treatment and that his "speech and conduct constituted protected activity under both the [ADA] and the First Amendment." [TAC ¶ 98]. Next, he alleges that, in response to his speech and conduct, PBSO personnel retaliated by forcibly removing his brace, threatening him, and shackling him. *Id.* ¶ 99. The TAC states that Sheriff Bradshaw is liable under *Monell* for "maintaining or allowing policies, practices, or

customs that tolerate retaliatory conduct by jail personnel in response to disability-related complaints and protected advocacy." *Id.* ¶ 101. According to the TAC, the "adverse conduct … occurred in close temporal proximity to Plaintiff's protected activity and resulted in both physical harm and the suppression of further protected expression." *Id.* ¶ 102. Plaintiff seeks declaratory and injunctive relief under this count. *Id.* ¶ 103.

To prevail on a First Amendment retaliation claim under section 1983, a plaintiff must establish the following elements: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). Additionally, under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Here, the TAC alleges that Plaintiff requested certain accommodations and objected to unlawful treatment. These allegations are insufficiently detailed. Further, the TAC does not sufficiently provide a causal relationship between the retaliatory actions taken by jail personnel and Plaintiff's protected speech. Therefore, Count V must be dismissed. The Court will permit Plaintiff to amend Count V once more, as amendment would not necessarily be futile.

f. Count VI

Count VI of the TAC alleges municipal liability under section 1983 and *Monell v. Department of Social Services* (Count VI). "In *Monell*, the Supreme Court held that municipalities and other local governments may be held directly liable under § 1983 for constitutional violations

if the injury stems from the government's enforcement of a policy or custom." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1295 (11th Cir. 2024). In order properly state a *Monell* claim, a plaintiff "must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Id.* (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). As stated above, the Court finds no violation of Plaintiff's constitutional rights by Sheriff Bradshaw. Therefore, the *Monell* claim fails and must be dismissed. This dismissal is without prejudice to Plaintiff amending VI if he can do so in good faith and in full compliance with the applicable law.

**IV. <u>Conclusion</u>**

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Sheriff Ric L. Bradshaw, in his official capacity as Sheriff of Palm Beach County's Motion to Dismiss Third Amended Verified Complaint [DE 44] is **GRANTED IN PART AND DENIED IN PART**, as specified in this Order.
2. Counts I and II are **DISMISSED WITH PREJUDICE** against Sheriff Bradshaw.
3. Counts III, IV, V, and VI are **DISMISSED WITHOUT PREJUDICE** against Sheriff Bradshaw. Plaintiff may file a Fourth Amended Complaint on or before **October 31, 2025**, making specific allegations that are in full compliance with the applicable case law and the Federal Rules of Civil Procedure.
4. To the extent that Plaintiff is using AI to aid him in drafting his filings, Plaintiff is hereby put on notice that he is required to supervise the AI and ensure that there are no hallucinated citations or quotations in his papers. If Plaintiff fails to meet this obligation, the Court will consider imposing sanctions upon him.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of October 2025.

William Matthewman
WILLIAM MATTHEWMAN
Chief United States Magistrate Judge