UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-80650-MATTHEWMAN

MATTHEW NICHOLAS MANISERO,

Plaintiff,

vs.

SHERIFF RIC L. BRADSHAW, in his official capacity, et al.,

Defendants.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT, CITY OF BOCA RATON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [DE 45]**

THIS CAUSE is before the Court upon Defendant City of Boca Raton's ("City") Motion to Dismiss Third Amended Complaint ("Motion") [DE 45]. Plaintiff Matthew Nicholas Manisero ("Plaintiff") filed a Response [DE 47], and Defendant filed a Reply [DE 51]. The Motion is now ripe for review. The Court has carefully considered the Motion, the Response, the Reply, and is otherwise fully advised in the premises.

## I. Background

The lawsuit arises from a motor vehicle collision on October 15, 2024. Plaintiff alleges that he was seriously injured in that accident and remains physically impaired with a permanent leg injury that leaves him wheelchair bound. According to Plaintiff, criminal citations related to the motor vehicle accident were mailed to an address where he was not currently residing, which led to the issuance of a bench warrant and his arrest. He was arrested on April 7, 2025, and then

allegedly denied accommodations for his injury. The criminal citations were dismissed on July 8, 2025.

On May 1, 2025, Plaintiff filed a Complaint against Sheriff Bradshaw and several other Defendants in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida. [DE 1-2]. On May 27, 2025, Defendant the City of Boca Raton removed the case to the Southern District of Florida. [DE 1]. On June 2, 2025, Plaintiff filed a First Amended Complaint [DE 8]. Defendant Palm Beach Sheriff's Office, Defendant Boca Raton Police Department, Defendant State Attorney's Office for the 15th Judicial Circuit, Defendant Florida Department of Highway Safety and Motor Vehicles, and Defendant Florida Highway Patrol filed motions to dismiss the First Amended Complaint. [DEs 17, 19, 20, 22]. Thereafter, Plaintiff moved for leave to file a Second Amended Complaint [DE 36], which was later denied [DE 40]. The Court held a Status Conference on July 21, 2025. [DE 39]. At that time, Plaintiff made an Ore Tenus Motion to File a Third Amended Complaint, which the Court granted after all of the parties consented. *Id.* The pending motions to dismiss the First Amended Complaint were denied as moot and without prejudice. [DE 40]. In light of the foregoing, Plaintiff has actually only filed two different versions of his complaint—the original Complaint and the Third Amended Complaint.

Plaintiff filed his Third Amended Complaint against solely Defendants Sheriff Ric. L. Bradshaw, the City of Beach Raton, and John Does 1-5 on July 31, 2025. [Third Am. Compl. ("TAC"), DE 43]. It alleges several claims under 42 U.S.C. § 1983: denial of procedural due process in violation of the Fourteenth Amendment (Count I); unlawful seizure and false arrest in violation of the Fourth and Fourteenth Amendments (Count II); and deliberate indifference to the serious medical needs of a pretrial detainee in violation of the Fourteenth Amendment (Count III). [DE 43]. The Third Amended Complaint also alleges a violation of the Americans with Disabilities

Act ("ADA") (Count IV); retaliation for protected activity in violation of section 1983 and the ADA (Count V); and municipal liability under section 1983 and *Monell v. Department of Social Services* (Count VI). *Id.*

**II. Motion, Response, and Reply**

a. Motion

The City first argues that it had "absolutely zero involvement with the service of the criminal traffic citations and the issuance of the capias that resulted from Plaintiff's failure to appear at a criminal hearing related to the traffic citations." [DE 45 at 2]. Next, it asserts that the TAC "does not identify any constitutional violation caused by the City" since "probable cause existed to arrest Plaintiff." *Id.* The City further contends that Plaintiff has "failed to satisfy the rigorous standards of *Monell*[1] to hold the City responsible for any purported constitutional violation." *Id.* at 2. It also maintains that Plaintiff "does not point to a single official policy or enough substantially similar instances to establish a custom or practice." *Id.* at 10. The City also rejects section 105(a)–(d) of the TAC, which alleges certain unconstitutional policies as "vague and conclusory" allegations that are insufficiently pled. *Id.* at 11. Finally, it argues that section 78 of the TAC, which alleges that the City had no formal policy requiring supervisory review of crash reports, "fails to allege or describe any substantially similar cases" and "cannot plausibly support the notion that the City has a custom or practice to satisfy *Monell*." *Id.* at 13.

b. Response

In response, Plaintiff first tries to clear up certain facts and then argues that the "Arrest/Notice to Appear and the Probable Cause Affidavit were authored by the Boca Raton Police Department personnel and only later transmitted to the County for docketing and mailing.

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

The initiating documents … were all generated by City employees without ever interviewing Plaintiff, verifying his survival status, or obtaining his statement." [DE 47 at 4]. Next, Plaintiff claims that the City "implies the ADA does not apply to its law enforcement functions. That is incorrect." *Id.* at 5. Plaintiff also maintains that "probable cause cannot be established by incomplete, erroneous, and incomplete reports." *Id.* at 6. He further points out that all charges were "formally dismissed by the State Attorney." *Id.* With regard to the *Monell* allegations, Plaintiff contends that the TAC "identifies customs and policies including: reliance on incomplete incident reports; failure to interview the only injured party; and systemic mishandling of address data leading to misrouted documents," which "omissions directly caused constitutional deprivations and satisfy *Monell*." *Id.* at 5.

c. <u>Reply</u>

In reply, the City argues that Counts I, II, and IV should be dismissed "on the grounds that the TAC, and its incorporated exhibits, undoubtedly demonstrate that the City committed no constitutional violation." [DE 51 at 2]. The City points out that, in his Response, Plaintiff seemingly "abandoned the portion of his Procedural Due Process Claim (Count I) to the extent it concerned mailing of the citations." *Id.* Thus, the City's "sole involvement in this action was submitting the sworn incident report." *Id.* at 5. Further, "[p]robable cause supports the traffic citations and forecloses Plaintiff's claim for constitutional harm." *Id.* at 4. And, Plaintiff "has alleged zero facts that would negate probable cause for the traffic infractions he was charged with." *Id.* The City emphasizes that the fact that Plaintiff's charges were ultimately dropped does not negate probable cause. *Id.* at 6.

The City also argues that Counts III, IV, and V of the TAC do not include any allegations against the City and specifically address actions while Plaintiff was detained in the custody of the

Palm Beach Sheriff's Office. *Id.* at 2 n.2. It contends that, "[t]o the extent [ ] these claims are purportedly brought against the City, such claims should be dismissed as a shotgun pleading because the City is wholly unaware due to a lack of any allegations against the City in the counts and the fact that Plaintiff does not state who the claims are brought against." *Id.*

With regard to the *Monell* claim (Count VI), the City argues that there was no constitutional violation and also that, even if one had been established, Plaintiff "has failed to allege that a City policy or customer or practice caused the violation." *Id.* at 7. The City claims that the TAC is "unquestionably premised on a single alleged incident (his own incident) of a constitutional violation, which is insufficient to prove an unofficial policy or custom." *Id.* at 8. Finally, the City asserts that, to the extent Plaintiff tries to raise a general constitutional deliberate indifference claim related to the training and supervision of the City's officers, such a claim fails because the TAC is "wholly devoid of any factual support that the City knew of a need to train or supervise its officers." *Id.*

## III. Legal Standards and Analysis

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Pleadings, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* at 680-681 (citations omitted). The Court must review the "well-pleaded factual allegations" and, assuming their veracity, "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. A plaintiff must, under *Twombly*'s construction of Rule 8, cross the line "'from conceivable to plausible.'" *Id.* at 680 (citation omitted). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276–77 (11th Cir. 2003) (citation omitted). "A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019)).

a. <u>Shotgun Pleading Issue</u>

"'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–

23 (11th Cir. 2015). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). There are four basic types of shotgun pleadings: (1) those in which each count adopts the allegations of all preceding counts; (2) those that are simply replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) those that do not separate each cause of action or claim for relief into different counts; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *See Weiland*, 792 F.3d at 1321–23 (quotations omitted); *see also Strategic Income Fund, LLC. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Shotgun pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996).

The Court has carefully reviewed the TAC. It is unclear whether Plaintiff is including the City in Counts III, IV, and V. And, the City has not made any arguments other than the shotgun pleading argument as to why these counts should be dismissed against it. Therefore, Plaintiff should be permitted to replead Counts III, IV, and V once more to make specific allegations against the City if he intends to sue the City under those counts. However, the Court cautions Plaintiff that any amendment must fully comply with Federal Rule of Civil Procedure 11.

b. Count I

Count I of the TAC alleges denial of procedural due process in violation of the Fourteenth Amendment. Count I is seemingly based on the Boca Raton Police Department's mailing of traffic citations and related legal documents to an outdated address for Plaintiff, which the TAC alleges "constitutes a deliberate disregard of Plaintiff's procedural due process rights under the Fourteenth Amendment." [TAC ¶ 55]. The TAC alleges that the mailing to the wrong address was done

knowingly because Plaintiff's correct address was listed on the citations themselves. *Id.* ¶ 56. Further, "Defendants' conduct effectively obstructed Plaintiff's access to the courts." *Id.* ¶ 57. The TAC also alleges that the citations were "generated and mailed by the Boca Raton Police Department" and that the "City's failure to ensure proper delivery, despite possessing accurate address data directly led to Plaintiff's lack of notice, subsequent failure to appear, issuance of a bench warrant, and unlawful arrest—all in violation of procedural due process." *Id.* ¶ 59. It further alleges that no officer or agent of the City "conducted a follow-up investigation to confirm Plaintiff's medical status or initiate post-incident contact." *Id.* ¶ 60. The TAC states that the "procedural violations described herein did not occur in isolation," but rather they "resulted from established practices and policy failures by both the City of Boca Raton and Palm Beach County Sheriff's Office." *Id.* ¶ 68. Finally, the City "failed to ensure that CSO-prepared reports were reviewed and verified by sworn personnel, and failed to implement address-checking or mailing procedures to avoid erroneous service—despite access to current address data. These customs reflect institutional disregard for due process safeguards in citation enforcement." *Id.* ¶ 69.

In sum, Plaintiff alleges that the City committed a due process violation when the Boca Raton Police Department mailed traffic citations and related legal documents to an outdated address for Plaintiff, which resulted in an obstruction of Plaintiff's access to the court. Plaintiff also alleges that the City's failure to ensure proper delivery caused Plaintiff's lack of notice, subsequent failure to appear, issuance of a bench warrant, and unlawful arrest. Plaintiff also seemingly alleges that, because no officer or agent of the City conducted a follow-up investigation and because Plaintiff's charges were later dropped, there was no probable cause for his arrest.

The Court first rejects the City's argument that Plaintiff somehow abandoned his argument about the mailing of the traffic citations and related documents in his Response. Plaintiff does

discuss that portion of his claim in the Response. Thus, the Court will consider the sufficiency of the relevant allegations in the TAC. The Court will also take judicial notice of certain facts without converting the Motion into a motion for summary judgment. *See, e.g., Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). This is appropriate here, where both sides are alluding to attached documents, and the documents are available on the docket in Plaintiff's criminal case in the County Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (Case No. 50-2025-CT-0012181-AXXX-SB). *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").

According to the Boca Raton Police Department's Arrest/Notice to Appear dated October 31, 2024, the officer requested a warrant be issued for the charges of driving while license cancelled, suspended, or revoked in violation of section 322.34(2B), Florida Statutes, and driving without a motorcycle endorsement, in violation of section 322.03(5), Florida Statutes. [DE 45-1 at 3]. On January 22, 2025, the administrative judge of the County Court of the Fifteenth Judicial Circuit, Criminal Division in and for Palm Beach County, Florida, issued an Administrative Order to Issue Summons to Plaintiff for the commission of the misdemeanor traffic charges. *Id.* at 4. The criminal summons was then issued. *Id.* at 5–6. It is clear from the documentation that the Palm Beach Sheriff's Office then became responsible for service of the criminal summons. *Id.* at 7. When Plaintiff failed to appear at his arraignment, a capias was issued. *Id.* at 8–10. Thus, even if the Uniform Traffic Citations were mailed to an improper address by the City, which is belied by Plaintiff's concession that the Uniform Traffic Citations were sent to the address listed on his "outdated Florida ID," DE 43-1 at 17, Plaintiff has not and cannot allege a constitutional violation

against the City based on its alleged failure to serve him at the proper address. In other words, Plaintiff's access to court and his arrest were not directly caused by any conduct of the City.

With regard to Plaintiff's assertion that the City violated his constitutional rights by insufficiently investigating the accident and failing to meet the probable cause requirement, the Court finds Plaintiff's claims to be without any merit. Probable cause is established "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Paez*, 915 F.3d at 1285 (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (emphasis omitted)). The Florida Traffic Crash Report is attached to the TAC, and it lays out various facts surrounding the incident. [DE 43-1]. The Probable Cause Affidavit is attached to the Motion. [DE 45-1 at 3]. It states in relevant part that, "[a] record search on [Plaintiff] revealed he had a suspended FL DL from a DUI in 2019 along with several additional separate suspensions. Manisero received notice of his suspension as a result of his DUI arrest and court order. Additionally, [Plaintiff] was found to have no endorsement to be operating his Harley MC." *Id.*

As pointed out by the City, there was facial probable cause for the charges against Plaintiff, and Plaintiff has not alleged differently. He simply claims in the TAC that the City should have performed a more in-depth investigation, but there is no support for this claim in the law. Additionally, Plaintiff's arrest was not false or illegal, as he claims. *See Raymond v. Hillsborough Cnty.*, No. 24-14124, 2025 WL 2409096, at *3 (11th Cir. Aug. 20, 2025) ("The existence of probable cause at the time of arrest serves as an absolute bar to a false arrest claim."). The facts alleged in the TAC, when read in conjunction with the parties' attachments, simply do not amount to a constitutional violation. Therefore, Count I must be dismissed with prejudice as any

amendment would be futile. *See Jones v. Fla. Dep't of Corr.*, No. 21-13961, 2022 WL 9712236, at *2 (11th Cir. Oct. 17, 2022) ("A district court need not grant leave to amend however, if the plaintiff clearly indicates that he does not want to amend or if amendment would be futile because a more carefully crafted complaint would still not be able to state a claim.").

c. Count II

Count II of the TAC alleges unlawful seizure and false arrest in violation of the Fourth and Fourteenth Amendments. The TAC alleges that Plaintiff "was unlawfully seized and falsely arrested based on citations and a warrant originating from investigative reports—specifically a crash report authored by a Community Service Officer (CSO), a non-sworn civilian employee of the City of Boca Raton Police Department." [TAC ¶ 72]. Moreover, those reports were "incomplete, unverified, and procedurally deficient, and no sworn law enforcement officer independently corroborated or supplemented them prior to initiating enforcement action." *Id.* The TAC states that Plaintiff was never interviewed or contacted, and that, these facts, taken together, "undermined the factual and legal basis for the citations and warrant." *Id.* Count II again alleges that the citations were sent to an address Plaintiff had not lived in over five years, despite the correct address being printed on the citations. *Id.* ¶ 74. Count II also alleges that the constitutional violations described in the TAC "did not arise from an isolated mistake or the conduct of a rogue officer," but rather were the "foreseeable result of systemic failures within the City of Boca Raton's police practices." *Id.* ¶ 76. Specifically, "the City has maintained a custom or policy of relying on unsworn, unverified CSO crash reports as the basis for initiating citations and criminal enforcement, without requiring follow-up or sworn review by trained law enforcement officers." *Id.* The TAC further states, "[o]n information and belief, the City has not adopted any formal policy requiring supervisory review or sworn officer verification of CSO crash reports prior to

issuance of criminal citations or warrant referrals. This failure, repeated across multiple cases, reflects deliberate indifference to the risk of unlawful arrest based on procedurally invalid documentation." *Id.* ¶ 78. In sum, "[t]his practice, combined with the City's failure to ensure accurate service or address verification for citation delivery, reflects deliberate indifference to the risk of unlawful seizures and arrests based on procedurally invalid documents. These omissions, repeated and institutional in nature, were the moving force behind Plaintiff's false arrest and deprivation of liberty in violation of the Fourth and Fourteenth Amendments. As such[,] municipal liability is properly asserted under" *Monell*. *Id.* ¶ 80.

The same analysis applies here that applied to Count I. There simply was no constitutional violation by the City here. The allegations are at odds with the attachments to the pleadings and do not demonstrate a false arrest or the deprivation of Plaintiff's liberty in violation of the Fourth and Fourteenth Amendments. Further, Count II must be dismissed with prejudice as any amendment would be futile.

d. <u>Count VI</u>

Count VI of the TAC alleges municipal liability under section 1983 and *Monell v. Department of Social Services* (Count VI). Count VI alleges that the City, through its police departments, "maintained policies, practices, or customs that violation Plaintiff's constitutional rights, including: (a) relying on Community Service Officer (CSO) reports to initiate criminal enforcement without sworn verification or investigation; (b) failing to conduct follow-up with victims of serious trauma before initiating prosecution; (c) mailing citations to outdated addresses despite having correct address data; [and] (d) failing to ensure that citations or legal processes were properly verified or served." [TAC ¶ 105]. According to the TAC, "[t]hese acts were not isolated errors but reflect a sustained failure by the City to train, supervise, or implement basic procedural

safeguards in traffic enforcement and post-crash investigations. As a direct result, Plaintiff was misidentified, denied notice, wrongfully prosecuted, and ultimately seized in violation of the Fourth and Fourteenth Amendments." *Id.* ¶ 106. Count VI further alleges that the City, through its police department, "has failed to adequately train or supervise officers in the proper service, mailing, and address verification procedures for citations issued after traffic incidents involving injured civilians." *Id.* ¶ 112. According to the TAC, the harm suffered by Plaintiff "followed from institutional failures so widespread and consistent that they constituted official policy." *Id.* ¶ 114.

"In *Monell*, the Supreme Court held that municipalities and other local governments may be held directly liable under § 1983 for constitutional violations if the injury stems from the government's enforcement of a policy or custom." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1295 (11th Cir. 2024). In order properly state a *Monell* claim, a plaintiff "must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Id.* (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). As stated above, the Court finds no violation of Plaintiff's constitutional rights by the City. Therefore, the *Monell* claim fails. However, Plaintiff shall be provided to amend this claim if he can otherwise establish a constitutional violation.

**IV. <u>Conclusion</u>**

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant City of Boca's Motion to Dismiss Third Amended Complaint [DE 45] is **GRANTED IN PART AND DENIED IN PART**, as specified in this Order.
2. Counts I and II are **DISMISSED WITH PREJUDICE.**

3. Counts III, IV, and V are **DISMISSED WITHOUT PREJUDICE** against the City. Plaintiff may file a Fourth Amended Complaint on or before **October 31, 2025**, making specific allegations against the City under those counts if he intends to sue the City under those counts and can make such allegations in good faith and in full compliance with Federal Rule of Civil Procedure 11.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of October 2025.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge